**TYRONE FIRE PATROL COMPANY, NO. 1, a Pennsylvania Corporation, and Ralph Stimer, Eugene Zimmerman, and Thomas Fetters, all adult individuals, Appellants**

v.

**TYRONE BOROUGH, a home rule municipality.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2013.

Decided March 21, 2014.

Reargument Denied May 6, 2014.

---

80

Robert P. Petyak, Ebensburg, for appellants.

Daniel L. Stants, Altoona, for appellee.

BEFORE: PELLEGRINI, President Judge, McGINLEY, Judge (P.), and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

The Tyrone Fire Patrol Company, No. 1, (Patrol) and Ralph Stimer (Stimer), Eu-

gene Zimmerman (Zimmerman), and Thomas Fetters (Fetters) (collectively, Appellants) appeal from the February 12, 2013 order of the Court of Common Pleas of Blair County (trial court) granting the motion for summary judgment filed by Tyrone Borough (Borough) and dismissing Appellants' complaint with prejudice. We affirm.

## I. Statutory History

The Borough created the Patrol, which was incorporated on June 15, 1893, "for the purpose and object of protecting the property of the Citizens of Tyrone from the ravages of fire." (Reproduced Record (R.R.) at 259a–61a.) On June 18, 1941, the Commonwealth enacted sections 1201 through 1203 of the Health and Safety Act,[1] which are now repealed and replaced by sections 7431 through 7437 of the

---

1. Act of June 18, 1941, P.L. 1317, 35 P.S. §§ 1201–1203. Sections 1201 to 1203 stated as follows:

§ 1201. Nomination and confirmation; powers

Any volunteer fire company in any city, borough, town, township or home rule municipality may nominate any of its members as special fire police. All special fire police so nominated shall, before they enter upon their duties as such, be confirmed by the mayor of the city, the mayor of the borough or town, the chairman of the board of commissioners or supervisors of the township, or the chief executive officer of a home rule municipality, as the case may be. When so confirmed and sworn and displaying a badge of authority they shall have full power to regulate traffic and keep crowds under control at or in the vicinity of any fire on which their companies are in attendance and to exercise such other police powers as are necessary in order to facilitate and prevent interference with the work of firemen in extinguishing fires and, in addition, shall have the police powers necessary to perform their duties when functioning as special fire police at any function, event, or parade conducted by, and under the auspices of, any volunteer fire company, or any

other event, function, or parade conducted by an organization other than a volunteer fire company, providing the request to perform these duties is made by the governing body of the city, borough, town, township, or home rule municipality, in which the event will be conducted, or when accidents, floods or any other emergencies require performance of such traffic-control and crowd control duties. Such duties may be performed without prior request from the governing body until the arrival of proper State, city, borough, town, township, or home rule municipality, police authority and thereafter subject to direction of such police authority until the emergency no longer exists. A person functioning as special fire police, and performing a duty under any of the above conditions, shall be deemed to be performing the duties of his employment. Fire police performing such duties shall be identifiable by, at minimum, the wearing of a distinctive arm band or hat or uniform or insignia. Under no circumstances shall this act be construed to grant special fire police the right and/or power to use firearms or other weapons in the exercise of special fire police powers granted hereunder.

§ 1202. Powers in another city, borough, town or township

Emergency Management Services Code (EMS Code).[2] The Health and Safety Act provided the procedure for the nomination and confirmation of special fire police and set forth the powers given to fire police. Pursuant to the Health and Safety Act, the Borough established the Tyrone Fire Police (Fire Police), an unincorporated association, whose members were members of and nominated by the Borough's fire companies and provided fire protection services within the Borough. (Trial court op. at 1.).

The Borough asserts that the first nominated members of the Fire Police were

confirmed in 1949; however, the earliest ordinance in the record related to the Fire Police is Ordinance No. 516,[3] which the Borough enacted on November 2, 1953. This ordinance authorized the "Fire Police of the Borough of Tyrone" to use flashing blue lights on its vehicles when responding to emergencies. (R.R. at 199a.). Ordinance No. 568,[4] enacted by the Borough on July 7, 1958, provided the earliest standards for the nomination and appointment of Fire Police members. (Trial court op. at 2; *see* R.R. at 200a.) The Borough amended this ordinance by enacting Ordinance No. 572[5] on November 6, 1958,

Whenever any volunteer fire company is in attendance on a fire, or when such special fire police are on special duty as hereinbefore provided, such special fire police in any city, borough, town or township other than the one in which such fire company is organized shall have the same power and authority in such other city, borough, town or township as they would have in that by which they were appointed.

§ 1203. Badge; control

All special fire police when on duty shall display a badge of authority and shall be subject to the control of the chief of police, if any, of the city, borough, town or township in which they are serving, or, if none, of a member of the Pennsylvania State Police.

2. 35 Pa.C.S. §§ 7431–7437.

3. Tyrone, Pa., Ordinance 516 (Nov. 2, 1953). In pertinent part, Ordinance No. 516 read as follows:

Be it ordained and enacted by the Borough Council of the Borough of Tyrone, Blair County, Pennsylvania, and it is hereby ordained and enacted by authority of the same as follows:

SECTION 1 Active members of the Fire Department of the Borough of Tyrone are authorized to install and maintain on their private automobiles standard type emergency flashing lamps with blue lens.

\* \* \*

SECTION 2 The active members of the Fire Department of the Borough of Tyrone

authorized to install and maintain such flashing lamps shall be restricted in number to ten (10) members from each of the three (3) volunteer fire companies of Tyrone.

\* \* \*

SECTION 3 The Fire Committee of the Borough Council shall have authority at any time in its discretion to rescind the authorization granted to any member of the Fire Department to use such lamp on his car and shall report such change to the Fire Chief and to the Chief of Police and such change shall thereupon become immediately effective. The Fire Committee shall make such regulations as it deems necessary relative to the installation, maintenance and operation of such flashing lamps that are not inconsistent with the provisions of this Ordinance.

(R.R. at 199a.)

4. Tyrone, Pa., Ordinance 568 (July 7, 1958). The language of Ordinance No. 568 does not appear in the record.

5. Tyrone, Pa., Ordinance 572 (Nov. 6, 1958). In relevant part, Ordinance No. 572 stated as follows:

SECTION 1. Section 1, Article II of the Tyrone Borough Fire Code No. 568 "The Tyrone Borough Code" is hereby amended to read as follows:

"Section 1. There shall be nominated every three (3) years, in the month of December, by the Fire Chief of the Borough of Tyrone, eight (8) members of each of the

(R.R. at 200a), and then, on April 9, 2001, enacted Ordinance No. 1180,[6] which repealed and replaced any ordinances that were inconsistent. Ordinance No. 1180 specifically authorized the "Tyrone Fire police" to provide traffic and crowd control services during emergency responses by the Borough's fire companies and civic events when requested by the Borough. (R.R. at 205a–08a.) Throughout the history of the Fire Police, the Borough contemplated that Fire Police members would **first** be active members of a Borough fire company in order to be eligible to serve as fire police and that the Borough would have the authority to remove Fire Police members from this position at the Borough's discretion. Thus, the Borough's removal of a Fire Police member from his position would not mandate the removal of that member from a Borough fire company.[7] Pursuant to section 7437 of the EMS Code, Fire Police members are under the control of the chief of police of the Borough. 35 Pa.C.S. § 7437 ("All special fire

police when on duty shall display a badge of authority and shall be subject to the control of the chief of police, if any, of the ... borough ... in which they are serving, or, if none, of a member of the Pennsylvania State Police.").

## II. Procedural History

The Fire Police applied to the United States Department of Agriculture (USDA) for grant money in order to purchase a new vehicle. (R.R. at 188a.) On April 13, 2010, the Fire Police received a letter from the USDA that directed the Fire Police to re-adopt the name of the Patrol in order to obtain the grant for purchase of the vehicle. (R.R. at 187a–88a.) At that time, the Patrol was a dormant corporation and had not been in operation for years. (Trial court op. at 2.) On May 6, 2010, members of the Fire Police began the process of changing the name of the Fire Police to the Patrol, ultimately convincing its membership to approve the name change by vote without prior consultation with the

---

fire companies comprising the Tyrone Fire Department, who shall, when confirmed by the Borough Council and sworn by the Burgess as required by law, be known as Tyrone Fire Police."
(R.R. at 200a.)

**6.** Tyrone, Pa., Ordinance 1180 (Apr. 9, 2001). In relevant part, Ordinance No. 1180 appeared as follows:

§ 20–16. Nomination and Membership.
 There shall be nominated, from time to time, by the Fire Chief of the Borough of Tyrone, members of each of the fire companies comprising the Tyrone Fire Department, who shall, when confirmed by the Borough Council and sworn by the Mayor as required by law, be known as "Tyrone Fire police." Every such member shall serve at the pleasure of Borough Council, and Council shall have the authority to remove any member of the fire police at any time for any reason.

 * * *
§ 20–17. Qualifications.

No person shall be nominated for or appointed to the fire police who has not attained the age of twenty-one (21) years. In addition, all fire police shall, at all times, be members in good standing of one (1) of the three (3) fire companies which comprise the Tyrone Fire Department.
 * * *
§ 20–21. Powers.
 The fire police shall have full police powers, as provided by law, when displaying a badge of authority, to regulate traffic, keep crowds under control and to prevent interference by the public at the scene of parades, accidents, floods or other emergencies.
(R.R. at 205a, 207a.)

**7.** We note that Article II, section V of the Neptune Volunteer Fire Company Number 1's by-laws provides that "[i]f any member who is a member of the Tyrone Fire Police should quit or are [sic] removed from the Fire Police, they [sic] need to re-apply for membership and go through the six month probation." (R.R. at 218a.)

Borough. (Trial court op. at 2–3; R.R. at 288a.) After the name change, Appellants changed the name on all bank accounts from the Fire Police to the Patrol and also voted to sell the Fire Police's only vehicle to Stimer. (Trial court op. at 3.) The entity then operating under the name of the Patrol re-applied for the USDA grant. (Trial court op. at 3.) Subsequently, the Patrol changed the locks on the Fire Police building, which had been leased to the Fire Police by the Borough from April 10, 1974 to April 14, 2024. (Trial court op. at 3; R.R. at 255a–57a.).

On March 14, 2011, the Borough enacted Ordinance No. 1310,[8] which repealed and replaced any prior inconsistent ordinances. In pertinent part, Ordinance No. 1310 states as follows:

§ 20–16. Nomination and Membership.

The fire chiefs of the Fire Companies comprising the Tyrone Fire Department, namely, the Blazing Arrow Hook & Ladder Volunteer Fire Company and Neptune Volunteer Fire Company Number 1, jointly shall nominate from time to time active members of either of said Fire Companies, and when confirmed by the Borough Council and sworn by the Mayor as required by law, said individuals shall become members of the "Tyrone Fire Police." Every such member shall serve at the pleasure of Borough Council, and Council shall have the authority to remove any member of the Tyrone Fire Police at any time for any reason including, but not limited to, conduct unbecoming a fire police member; failure to maintain any of the qualification [sic] set forth in Section 20–17; and/or upon recommendation from the Fire Company of which the fire police person is a member.

\* \* \*

§ 20–17. Qualifications.

No person shall be nominated for or appointed to the Tyrone Fire Police who has not attained the age of twenty-one (21) years. All fire police shall, at all times, be members in good standing of one [of] the two above named fire companies which comprise the Tyrone Fire Department and must maintain a valid driver's license. . . .

All persons, prior to appointment as fire police, and within six (6) months of the effective date of this Article, all current Fire Police members, shall undergo criminal background checks (NCI and child abuse—at the expense of the Borough) and shall receive the following certifications:

1. Basic and Advanced Fire Police Training;

2. Highway Safety Training;

3. EMIS Training; and/or

4. Any other such training required by the Borough from time to time, by resolution of the Borough Council.

\* \* \*

§ 20–19. Powers.

The fire police shall have full police powers, as provided by law, when displaying a badge of authority, to regulate traffic, keep crowds under control and to prevent interference by the public at the scene of parades, accidents, floods or other emergencies. In addition, the fire police shall properly rope off the scene of any conflagration immediately after their arrival at the scene. Together with the members of the Borough Police Force and other authorized law enforcement officers, the Fire Police are authorized to exclude from interference with the function of the regularly organized Fire Department all persons not

---

8. Tyrone, Pa., Ordinance 1310 (Mar. 14, 2011).

members thereof and to exclude from the area within the fire lines all unauthorized persons. They shall take into custody any and all persons persisting in such unauthorized interference.

(R.R. at 201a–03a.)

On May 17, 2011, the Neptune Volunteer Fire Company Number 1 and the Blazing Arrow Hook & Ladder Volunteer Fire Company (together, Fire Companies) sent the Borough Council (Council) a letter requesting the Council to address the situation between the Patrol and the Fire Police. The letter stated as follows:

In response to the situation concerning the Tyrone Fire Police/Tyrone Fire Patrol, whereas certain individuals have taken it upon themselves to arbitrarily change the name of the organization and conduct business detrimental to the operation and mission of said organization, we request that appropriate steps and action be taken to restore proper operation.

Some members have been denied access to the facilities and equipment necessary for the performance of their duties. A portion of this equipment is owned by the Tyrone Volunteer Firemen's Relief Association and entrusted to the Tyrone Fire Police per the Pennsylvania State guidelines for the operation of Volunteer Firemen's Relief Associations.

Adequate response to emergencies has been almost non-existant [sic]. Some Type [sic] of replacement/re-organization is needed. The Tyrone Fire Department has neither the manpower or [sic] training and resources to take over this function. Both State law and Borough ordinance prohibit Fire Police from serving as firefighters, officers or drivers, or vice-versa.

Your attention to this matter will be greatly appreciated.

(R.R. at 213a.) On July 11, 2011, only four months after the enactment of Ordinance No. 1310, the Council voted to remove Stimer, Zimmerman, and Fetters as members of the Fire Police and so informed them by letter dated July 14, 2011. (R.R. at 213a–16a.) Appellants admitted that, prior to their removal from their duties as fire police, they informed the Council that they would not comply with the new eligibility requirements under Ordinance No. 1310. (R.R. at 70a.).

On July 22, 2011, in a separate action, the Borough, the Fire Police, and the Fire Companies filed suit against the Patrol seeking declaratory relief that included possession of the Fire Police building and the assets and equipment owned and/or possessed by the Fire Police prior to the Patrol's alleged unlawful takeover of the Fire Police. (Trial court op. at 4.) On July 25, 2011, Appellants, naming themselves as both the Fire Patrol and the Fire Police, filed this action against the Borough, asserting that Ordinance No. 1310 is preempted by state statute, the Borough violated section 553 of the Pennsylvania Local Agency Law (Local Agency Law) [9] by removing Stimer, Zimmerman, and Fetters as members of the Fire Police without notice and a hearing, the Borough's removal policy violates equal protection under the law, and the Borough is a biased tribunal. (R.R. at 1a–18a.) The Borough filed preliminary objections. (R.R. at 38a–45a.).

By opinion and order dated November 2, 2011, the trial court determined that the Patrol lacked the capacity to file suit on behalf of the Fire Police and ordered that the name of the Fire Police be stricken from the caption. The trial court held that, as a matter of law, the Borough had the authority to exercise control over the

9. 2 Pa.C.S. § 553.

appointed members of the Fire Police and may remove them upon recommendation of the Fire Companies. Thus, the trial court sustained the Borough's preliminary objections that Appellants lacked the capacity to file suit on behalf of the Tyrone Fire Police and that Ordinance No. 1310 is not preempted by the EMS Code.[10] However, the trial court denied the Borough's preliminary objection that removal of Appellants as Fire Police members constituted an adjudication under the Local Agency Law. (R.R. at 105a–12a.).

The Borough filed a motion for summary judgment regarding the remaining issue in this case, whether the Local Agency Law provides for court review of the Borough's removal of Stimer, Zimmerman, and Fetters. (R.R. at 190a–98a.) By opinion and order dated February 12, 2013, the trial court determined that because the removal of Appellants does not constitute an "adjudication" under section 553 of the Local Agency Law and section 101 of the Administrative Law and Procedure Act,[11] Appellants are not entitled to court review of the Borough's decision. Relying on *Short v. Borough of Lawrenceville*, 548 Pa. 265, 696 A.2d 1158 (1997), and *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 693 A.2d 190 (1997), the trial court concluded that Appellants had no expectation of continued employment because no contract existed between Appellants and the Borough and no statute or ordinance conferred this expectation upon them. (R.R. at 339a–41a.).

The trial court also noted that, based on the May 17, 2011 letter sent by the Fire

Companies, Appellants no longer had the support of the Fire Companies. The trial court stated that, without this support, Appellants no longer met the statutory requirement of membership with a fire company under section 7433 of the EMS Code to be a Fire Police member and thus Appellants had no expectation of continued employment. The trial court also determined that the Borough had no choice but to remove Appellants from the Fire Police because Appellants no longer met the statutory requirement and such a ministerial application of the law is not an adjudication under the Local Agency Law. The trial court noted that the three cases cited by Appellants, *Kusnir v. Leach*, 64 Pa. Cmwlth. 65, 439 A.2d 223 (1982); *Ambron v. Philadelphia Civil Service Commission*, 54 Pa.Cmwlth. 488, 422 A.2d 225 (1980); and *Kretzler v. Ohio Township*, 14 Pa. Cmwlth. 236, 322 A.2d 157 (1974), are distinguishable from the present case. Thus, the trial court granted the Borough's motion for summary judgment. (R.R. at 342a–44a.).

On appeal to this Court,[12] Appellants argue that the trial court erred in granting the Borough's motion for summary judgment because there are material issues of fact in dispute as to whether Appellants are entitled to notice and a hearing under the Local Agency Law regarding their dismissal as Fire Police members.

## III. Discussion

### A. Summary Judgment

Pennsylvania Rule of Civil Procedure No. 1035.2 states that a party may move

---

10. This order of the trial court is not presently before us on appeal.

11. 2 Pa.C.S. § 101.

12. "[A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals." *Summers v. Certainteed Corporation*, 606 Pa. 294, 307, 997 A.2d 1152, 1159 (2010) (internal citation omitted).

for summary judgment when: (1) there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report; or (2) an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2(1), (2). The moving party bears the burden of proving the non-existence of genuine issues of fact. *Thompson Coal Company v. Pike Coal Company*, 488 Pa. 198, 204, 412 A.2d 466, 469 (1979). All doubts are to be resolved in favor of the non-moving party. *Id.* at 204, 412 A.2d at 468–69.

### B. Fire Police Removal an Administrative Function under EMS Code

Section 7431 of the EMS Code states that "[t]his subchapter applies to a volunteer fire company in any city, borough, town, township or home rule municipality." 35 Pa.C.S. § 7431. Under section 7433 of the EMS Code, "[a]n entity under section 7431 (relating to scope of subchapter) may nominate any of its members as special fire police." 35 Pa.C.S. § 7433. Section 7434 of the EMS Code provides for the confirmation of special fire police as follows:

> Special fire police nominated under this subchapter shall, before they enter upon their duties, be confirmed by the mayor of the city, the mayor of the borough or town, the chairman of the board of commissioners or supervisors of the township or the chief executive officer of a home rule municipality, as the case may be.

35 Pa.C.S. § 7434. Further, section 7435 of the EMS Code grants the following powers to special fire police:

**(a) Specific powers.**—When confirmed and sworn and displaying a badge of authority, special fire police shall have full power to regulate traffic and keep crowds under control at or in the vicinity of any fire on which their companies are in attendance and to exercise other police powers necessary to facilitate and prevent interference with the work of firemen in extinguishing fires. They shall also have the police powers necessary to perform their duties when functioning as special fire police at any function, event or parade conducted by and under the auspices of a volunteer fire company, or another event, function or parade conducted by an organization other than a volunteer fire company, provided that the request to perform these duties is made by the governing body of the city, borough, town, township or home rule municipality in which the event will be conducted, or when accidents, floods or any other emergencies require performance of traffic-control and crowd-control duties. The duties may be performed without prior request from the governing body until the arrival of proper State, city, borough, town, township or home rule municipality police authority and thereafter subject to direction of the police authority until the emergency no longer exists. A person functioning as special fire police and performing a duty under any of the conditions in this subsection shall be deemed to be performing the duties of his *employment.*

**(b) Identification.**—Fire police performing the duties under this subchapter shall be identifiable by, at minimum, the wearing of a distinctive arm band, hat, uniform or insignia.

**(c) Construction.**—Under no circumstances shall this subchapter be construed to grant special fire police the right to use firearms or other weapons

in the exercise of special fire police powers granted by this subchapter.

35 Pa.C.S. § 7435 (emphasis added). Therefore, the Borough merely performs an administrative function when it removes Fire Police members because, as in this case with Appellants, the former Fire Police members remain members of the Fire Companies at the Fire Companies' discretion. The Borough is merely reassigning the Fire Police members back to their jobs with their respective fire companies. The EMS Code is silent concerning any procedural rights for fire police, but if removal of Appellants constitutes an adjudication, the Borough must follow the due process requirements set forth in the Local Agency Law.

### C. No Due Process Required

Specifically, Appellants assert that the Borough deprived them of notice and a hearing in violation of section 553 of the Local Agency Law, which states as follows:

No *adjudication* of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony may be stenographically recorded and a full and complete record may be kept of the proceedings. In the event all testimony is not stenographically recorded and a full and complete record of the proceedings is not provided by the local agency, such testimony shall be stenographically recorded and a full and complete record of the proceedings shall be kept at the request of any party agreeing to pay the costs thereof.

2 Pa.C.S. § 553 (emphasis added). Section 752 of the Local Agency Law further provides that:

Any person aggrieved by an *adjudication* of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa.C.S. § 752 (emphasis added). Section 754 of the Local Agency Law provides for the disposition of an appeal from a local agency as follows:

(a) **Incomplete record.**—In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

(b) **Complete record.**—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. § 754.

In order for Appellants' claim to be valid, their removal must constitute an adjudication under the Local Agency Law and the Administrative Law and Procedure

Act.[13] An adjudication is defined as follows:

"**Adjudication.**" Any final order, decree, decision, determination or ruling by an agency *affecting personal or property rights, privileges,* immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa.C.S. § 101 (emphasis added).

### 1. Removal Not an Adjudication Under the Local Agency Law

#### a. No Property Right

 Appellants erroneously assume that the question of whether they were deprived of their due process rights is a question of fact when, to the contrary, it is a question of law under the Local Agency Law and the Administrative Law and Procedure Act. "[T]o be entitled to the benefits and procedural protections of the Local Agency Law, an individual must have had a personal or property right in the matter which is the subject of the adjudication." *Cope v. Bethlehem Housing Authority,* 95 Pa.Cmwlth. 99, 514 A.2d 295, 296 (1986). "A personal right ... which will constitute an adjudication pursuant to Section 101 of the Administrative Law and Procedure Act will arise if the party claiming a privilege can establish either some right ... created by statute and characterized as such or some constitutionally protected right...." *Pipkin,* 548 Pa. at 10 n. 3, 693 A.2d at 194 n. 3. "A local agency employee has a personal or property right in [his] employment where [he] can establish a legitimate expectation of continued employment through either a contract or statute." *Short,* 548 Pa. at 267, 696 A.2d at 1158.

In *Short,* the Borough of Lawrenceville dismissed the respondent from her position as the Borough of Lawrenceville's secretary/treasurer. The respondent filed suit against the Borough of Lawrenceville, arguing that the Borough of Lawrenceville violated her due process rights by not affording her a hearing before her dismissal. The court of common pleas found in favor of the respondent. On appeal to this Court, we affirmed the order of the court of common pleas that the respondent was entitled to a hearing under the Local Agency Law because the Borough of Lawrenceville's personnel manual contained a provision that granted employees due process when being dismissed.

Our Supreme Court reversed the order of this Court and remanded for consideration of any issues raised in the petition that were not previously addressed, concluding that no statute or contract existed that guaranteed the respondent continued employment as the secretary/treasurer of the Borough of Lawrenceville. In so de-

---

**13.** Appellants originally argued in their complaint that the Borough's removal of them from the Fire Police affected a personal or property right. (R.R. at 17a.) Appellants later asserted at oral argument and in their reply to new matter, without seeking leave to amend their original complaint, that the removal affected their privilege of serving as volunteer fire police. (Notes of Testimony, 10/17/2011, at 26–28; R.R. at 143a–44a.) However, the relevant case law does not support either argument. In the context of employment termination, the concept of "privilege" is no broader than "personal or property rights," and the idea of "privilege" is more closely associated with an entitlement or right. Therefore, there must be a statute or contract conferring an expectation of continued employment for either a personal or property right or a privilege to exist.

termining, the court noted that "a local agency employee only has the right to a hearing pursuant to Local Agency Law where she can establish that her dismissal affected a personal or property right." *Id.* The court further determined that an employee handbook or personnel manual cannot be considered a legislative action that guarantees a property right in employment unless granted by the Legislature. The court concluded that an employer cannot be equitably estopped from dismissing an at-will employee and a "personnel manual cannot contract away the right of summary dismissal." *Id.*

▮ In *Pipkin*, after a hearing, the Probationary Trooper Review Committee (Committee) of the Pennsylvania State Police (Police) dismissed a probationary state trooper from his position. The probationary state trooper appealed the decision to this Court, and we granted the Police's motion for summary judgment concluding that its decision did not constitute an adjudication under section 101 of the Administrative Law and Procedure Act. Our Supreme Court affirmed. In so deciding, the court noted that, absent a contract, at-will employees may have their employment terminated at any time for any reason or for no reason. The court held that the probationary state trooper had no expectation of continued employment, because he had no contract with the Police and no statutory provision guaranteed his right to continued employment. Further, the court noted that the statutory provision applicable to probationary state troopers expressly allowed the Committee to dismiss a probationary state trooper without the right to appeal to a civil court. The court concluded that, because no statutory or contractual right of continued employment existed, the probationary state trooper also failed to establish that his employment as a probationary state trooper

constituted a privilege and, thus, his dismissal could not be considered an adjudication under section 101 of the Administrative Law and Procedure Act. Clearly, precedent has established that local agency employees only have the right to a hearing pursuant to the Local Agency Law when they can establish that dismissal affects a personal or property right, specifically a statutory or contractual right of continued employment. *Short; Pipkin.*

▮ In addition, and significantly, Appellants are not employees but volunteers. "The relation of employer and employe exists when a party has the right to select the employe, the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done." *Coleman v. Board of Education of School District of Philadelphia,* 477 Pa. 414, 421, 383 A.2d 1275, 1279 (1978) (internal quotations and citations omitted). "The duty to pay an employe's salary is often coincident with the status of employer, but not solely determinative of that status." *Id.* While Fire Police members are confirmed by the Borough Council, serve at the pleasure of the Borough Council, and may be removed at any time for any reason by the Borough Council, the Fire Companies, and not the Borough Council, have the authority to nominate potential Fire Police members. Tyrone, Pa., Ordinance 1310; *see Coleman.* Additionally, under Ordinance No. 1310 Fire Police members are ineligible to serve if they are no longer members in good standing of one of the Fire Companies, a decision not within the Borough's control. Thus, the record does not establish an employment relationship between Appellants and the Borough Council.

▮ Moreover, even presuming that volunteers enjoy the same status as employees, there is no statutory or contractual right that provides for Appellants' expecta-

tion of continued service as Fire Police volunteers. The EMS Code, which governs special fire police, contains no provision conferring a right of guaranteed service. Moreover, similar to the facts in *Pipkin*, Ordinance No. 1310 specifically states that removal of Fire Police members is at the Borough's discretion or upon request of the Fire Companies. Therefore, Appellants have failed to cite any statutory authority or contract that creates such a property right in their service as Fire Police members.[14]

 It is undisputed that Appellants engaged in behavior that unilaterally changed the name of the Fire Police to the Patrol, the lock on the building leased to the Fire Police from the Borough, and the name on all bank accounts from the Fire Police to the Patrol without any approval or authority from the Borough. It was not until the Fire Companies wrote a letter to the Borough requesting that the Borough

address the situation between the Fire Police and the Patrol that the matter even came to the Borough's attention. Not only did the Borough have express authority to dismiss "any member of the Tyrone Fire Police at any time for any reason," Tyrone Pa., Ordinance 1310, but Appellants have not established an expectation of continued service as fire police and, therefore, the trial court correctly determined that it had no jurisdiction to review the Borough's determination to remove Appellants from their positions as Fire Police members.[15]

### b. No Privilege

 Like a personal right, "[a] . . . privilege which will constitute an adjudication pursuant to Section 101 of the Administrative Law and Procedure Act will arise if the party claiming a privilege can establish either some . . . privilege created by statute and characterized as such or some

14. Section 1190 of the Borough Code provides that "no person employed in any police or fire force of any borough shall be suspended without pay, removed or reduced in rank" except for the stated just cause reasons. Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 46190. Section 1190 further provides that "[a] person so employed shall have ten days from the date of receiving the notice [of charges against that person] in which to submit a written request for a hearing to the civil service commission under section 1191." *Id.* However, section 1190 applies only to paid employees. Ordinance No. 1310 provides that Fire Police members are only paid for their services at the discretion of the Borough. (R.R. at 202a) (". . . each member of the Tyrone Fire Police *may be compensated* by the Borough as the Borough Council *may determine from time to time*") (emphasis added). Accordingly, Appellants are not paid employees that have a statutory right to a continued expectation of employment under section 1190.

15. Appellants also assert that the Fire Police's constitution and by-laws provide a statutory right to guaranteed service as volunteer fire

police. The constitution and by-laws state that "any member with 25 years of service or age 70 will automatically become a life member. Any member, disabled in the line of duty will become a life member." (R.R. at 298a.) However, *Appellants failed to assert this argument prior to their appeal to this Court*. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Thus, this issue has been waived. Moreover, even if waiver did not apply, the Fire Police's constitution and by-laws were approved by the Association, not the Borough." (R.R. at 297a.) Thus, the Fire Police's constitution and by-laws are not contracts between the Borough and the Fire Police members and the constitution and by-laws are not legislative actions that confer an expectation of continued service on the Fire Police members. *See Short; Stumpp v. Stroudsburg Municipal Authority*, 540 Pa. 391, 394, 658 A.2d 333, 334 (1995) (noting that a local agency "does not have the power under law to enter into contracts of employment that contract away the right of summary dismissal, since the power to confer tenure must be expressly set forth in the enabling legislation.").

constitutionally protected ... privilege." *Pipkin,* 548 Pa. at 10 n. 3, 693 A.2d at 194 n. 3 (concluding that, because no statutory or contractual right of continued employment existed, the probationary state trooper also failed to establish that his employment constituted a privilege and thus his dismissal could not be considered an adjudication under section 101 of the Administrative Law and Procedure Act). *See also Morningstar v. Mifflin County School District,* 760 A.2d 1221 (Pa.Cmwlth.2000); *Hecknauer v. Coder,* 32 Pa.Cmwlth. 308, 379 A.2d 638 (1977). Thus, Appellants must demonstrate some statutory or constitutional privilege in continued service as Fire Police members for their removal to constitute an adjudication.

In *Hecknauer,* the city's mayor appointed Carl L. Hecknauer (Hecknauer) as the city zoning administrator, and he served in this capacity until the mayor verbally discharged him from that position. Hecknauer filed a mandamus action in the court of common pleas, seeking reinstatement to his position and payment of back salary. At trial, Hecknauer argued that the mayor and the city deprived him of adequate notice of a hearing and a hearing pursuant to the Local Agency Law. The court of common pleas granted the mayor and the city's compulsory nonsuit and dismissed Hecknauer's claim with prejudice.

On appeal to this Court, we determined that the mayor had express statutory authority to remove Hecknauer from his position and that Hecknauer had no expectation of continued public employment conferred upon him by either statute or contract. Thus, we affirmed the order of the court of common pleas, holding that:

> [W]e are unwilling to find that [Hecknauer's] interest in continued public employment constitutes either a 'personal right' or a 'privilege' within the meaning of the ... Local Agency Law absent the

presence of either (1) a personal right or privilege created by statute and characterized as such, or (2) some constitutionally protected right or privilege, neither of which is present here.

*Id.* at 640–41.

In *Morningstar,* the school district moved its bus stop from in front of Steven M. Morningstar and June M. Morningstar's (together, Morningstars) home to within walking distance of the Morningstars' home after seven years of having the same bus route. The Morningstars requested reconsideration and the board of school directors denied their request, citing safety reasons. The court of common pleas dismissed the Morningstars' appeal, holding that the school district's decision to change the bus stop was not an adjudication under the Local Agency Law. The court of common pleas determined that the school district's decision was a policy decision that did not affect a right of the Morningstars.

On appeal to this Court, the Morningstars argued that the school district's decision was an adjudication that affected their "privilege" of having the bus stop in front of their house. Citing *Pipkin* and applying the same principles used in employment cases under the Local Agency Law, we noted that "the Morningstars must point to some statutory or constitutional basis for their claim[,]" 760 A.2d at 1224, and the Morningstars failed to do so. Thus, we affirmed the order of the court of common pleas that concluded that it lacked jurisdiction to hear the Morningstars' appeal because it was not a reviewable adjudication.

Similar to the situations in both *Hecknauer* and *Morningstar,* Appellants in this case have failed to establish a privilege in continued service as Fire Police members based on a statutory, contractual, or constitutional right. Moreover, the trial court

determined that Ordinance No. 1310 was not preempted by state statute and that determination is not presently before us on appeal. Pursuant to Ordinance No. 1310, the Borough has discretion to remove Fire Police members for any reason. Thus, for that reason also, the trial court properly concluded that it lacked jurisdiction to hear Appellants' appeal because the Borough's removal of Appellants as Fire Police members was not an adjudication that affected a privilege of Appellants.

### D. Lack of Legal Support for Due Process in this Case

Additionally, the case law cited by Appellants, specifically *Kretzler*, *Kusnir*, and *Ambron*, lends little support to their argument. First, Appellants cite *Kretzler* for the proposition that a municipality performing an administrative function within the framework of a power or authority conferred upon it by law is a local agency within the meaning of the Local Agency Law. In *Kretzler*, the board of township supervisors promoted two police officers to the positions of chief of police and lieutenant. Thereafter, the board of township supervisors demoted both police officers. After the board of township supervisors denied the police officers' request for a hearing, they appealed to the court of common pleas, which granted the township's motion to quash the appeal.

On appeal to this Court, we held "that to the extent a township is performing an administrative function within the framework of a power or authority conferred upon it by law it is a local agency within the meaning of the [Local Agency Law]." 322 A.2d at 159. We noted that, for the police officers to be entitled to the due process protections found in the Local Agency Law, they must have a statutory personal or property right in their present rank such that their demotion would be considered an adjudication. We determined that section 2 of the Police Tenure Act [16] statutorily conferred upon the police officers a property or personal right to their present ranks and thus the police officers were entitled to an administrative hearing, and either party was conferred the right to judicial review of the adjudication. Therefore, we reversed the order of the court of common pleas and remanded the case to the court of common pleas with directions to remand the case to the board of township supervisors for further proceedings.

---

**16.** Act of June 15, 1951, P.L. 586, *as amended,* 53 P.S. § 812. Section 2 of the Police Tenure Act states:

No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. A person so employed shall not be removed for religious, racial or political reasons. A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed.

53 P.S. § 812. Unlike the Police Tenure Act, the Fire Police's constitution and by-laws are not acts of the Legislature. Moreover, section 2 of the Police Tenure Act specifically states instances when police officers may be suspended, removed, or reduced in rank whereas the governing ordinance in this case, Ordinance No. 1310, provides that the Borough may remove a Fire Police member for any reason.

Appellants correctly assert that, under *Kretzler*, decisions made by the Borough may trigger the protections of the Local Agency Law. However, Appellants fail to recognize the discussion in *Kretzler* that not all decisions made by the Borough fall under the definition of an adjudication that is subject to court review. Further, *Kretzler* is factually distinguishable because the police officers had a statutory right to an expectation of a hearing when being dismissed from their positions. No such statutory right exists in this case because Ordinance No. 1310 provides that the Borough may remove Fire Police members for any reason, and there is no state law conferring an expectation of continued service for Fire Police members. Accordingly, *Kretzler* supports our determination that the trial court correctly concluded that it had no jurisdiction to review the Borough's decision.

Second, Appellants cite *Kusnir* in support of their argument that Appellants do not have to be employees of the Borough to be protected by the provisions of the Local Agency Law. However, *Kusnir* is also factually distinguishable from this case. In *Kusnir*, a state college's conduct board held a misconduct hearing regarding a student's alleged disorderly conduct. The student appeared before the state college's conduct board with his brother, who acted as his advisor. Subsequently, the state college's conduct board recommended that the student be suspended from the college. The student appealed to the college's president, in pertinent part challenging that he had not been advised of his right to legal counsel. The college's president dismissed the appeal and adopted the suspension recommendation.

On appeal to this Court, we remanded the case to the college's conduct board so that a hearing could be held with legal representation for the student. We noted that the college's conduct board informed the student that legal representation was not allowed during the hearing. However, we held that, as a Commonwealth agency, the college is subject to the provisions of the Administrative Agency Law, which states that a party may be represented by legal counsel in a proceeding before a Commonwealth agency. We also concluded that the suspension affected a right or privilege of the student and thus the suspension constituted an adjudication.

Appellants correctly assert that the protections of the Local Agency Law extend beyond employees. However, *Kusnir* fails to advance Appellants' argument. Unlike Appellants, the student in *Kusnir* was afforded a hearing, and this Court determined that the suspension was an adjudication that affected a right or privilege of the student, which is reviewable by a court. Here, Appellants do not have a right or privilege affected because there is no expectation of continued service in the Fire Police. Thus, *Kusnir* is factually distinguishable and Appellants' reliance on it is misplaced.

Third, Appellants cite *Ambron* in support of their assertion that the Borough's determination to dismiss them from the Fire Police constituted an adjudication under the Local Agency Law and the Administrative Law and Procedure Act. However, *Ambron* is factually distinguishable from the instant case. In *Ambron*, four county detectives held their respective positions until transferred to the Philadelphia Police Department to be uniformed police officers. As county detectives, each was classified as a permanent civil service employee. The county detectives requested a hearing before the Philadelphia Civil Service Commission (Commission), contending that the transfers were in violation of the Civil Service Regulations. The Commission determined that it did not have juris-

diction over the matter. The county detectives appealed to the court of common pleas under the Local Agency Law, asserting that the transfers violated their rights under the Philadelphia Home Rule Charter and the Commission's regulations. The court of common pleas denied the appeal for lack of jurisdiction.

Prior to the order of the court of common pleas, the county detectives delivered to the Philadelphia District Attorney and the Director of Personnel of the City of Philadelphia a written request for a hearing and adjudication in this matter. Both agencies denied the request, and the county detectives appealed to the court of common pleas. The court of common pleas again denied the appeal for lack of jurisdiction. The county detectives appealed both orders of the court of common pleas to this Court.

On appeal, we remanded the case to the court of common pleas for a *de novo* hearing to determine whether the county detectives' guaranteed right to employment within the same class as a county detective was violated. We noted that the Philadelphia Civil Service Regulations provided a statutory right to the county detectives to only be transferred to jobs within the same class as a county detective and thus, if the county detectives' allegations were correct, their transfers constituted adjudications within the meaning of the Local Agency Law.

However, there was not enough evidence in the record for this Court to determine whether a county detective and a uniformed police officer were not within the same class of employment. We determined that the county detectives were entitled to a hearing, because their allegations involved violations of a statutory right that afforded the county detectives

an expectation of continued employment within the same class of jobs as a county detective. We concluded that it was at least questionable that the local agencies violated section 553 of the Local Agency Law by not affording the county detectives a hearing in order to make the adjudication valid. We noted that the court of common pleas, under section 754(a) of the Local Agency Law, should have either heard the appeal *de novo* or remanded the matter to the local agencies to develop a complete and full record.

Contrary to *Ambron,* Appellants have no statutory expectation of continued service as Fire Police members. The EMS Code does not contain any such provision and Ordinance No. 1310 expressly provides for the removal of Fire Police members at the Borough's discretion. Thus, because the Borough's decision does not constitute an adjudication, no hearing is necessary and the trial court did not err in granting the Borough's motion for summary judgment for lack of jurisdiction to review the Borough's decision.

For the reasons set forth above, we affirm.[17]

### ORDER

AND NOW, this 21st day of March, 2014, the February 12, 2013 order of the Court of Common Pleas of Blair County granting the motion for summary judgment of Tyrone Borough and dismissing Appellants' complaint with prejudice is affirmed.

---

17. We need not address Appellants' argument regarding tribunal bias, because the Bor-

ough's decision does not constitute an adjudication pursuant to the Local Agency Law.