504 A.2d 422

International Association of Fire Fighters, Local 2844, AFL-CIO, CLC, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

94

Argued November 13, 1985, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Samuel L. Spear*, with him, *Warren J. Borish, Meranze, Katz, Spear & Wilderman*, for petitioner.

*Kathryn Speaker MacNett*, with her, *James L. Crawford* and *Ellis H. Katz*, for respondent.

*John Markle, Jr.,* with him, *James A. Matthews, III, Drinker, Biddle & Reath,* for intervenors, Lower Merion Township et al.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., February 10, 1986:

The International Association of Fire Fighters, Local 2844, AFL-CIO, CLC (Union), appeals a Pennsylvania Labor Relations Board (Board) order dismissing its exceptions to a hearing examiner's proposed order. The examiner's order proposed to dismiss the Union's petition for investigation and certification of representatives for the eighteen paid firemen of the six volunteer fire companies located in Lower Merion Township. The examiner concluded that the Township and the volunteer fire companies were not "joint employers" for collective bargaining purposes. We affirm the Board's order.

Each of the six volunteer fire companies in Lower Merion Township employs three paid firemen, or "housemen," as they are commonly called. The housemen are responsible for driving vehicles to and from fire scenes and maintaining the firefighting equipment and the fire houses. The volunteer companies are not associated with each other and operate with funds contributed by Lower Merion Township[1] and private sources. To coordinate firefighting, the Township established the Lower Merion Township Fire Department, which consists of six township employees who are not firemen within the meaning of what is commonly known as the Policemen or Firemen Collective

---

[1] Of the total operating income for each volunteer company, the Township appropriates the following amounts: Belmont Hills, 70%; Bryn Mawr, 45%; Gladwyne, 60%; Merion of Ardmore, 40%; Penn Wynne-Overbrook Hills, 54%; and Union Fire Company of Lower Merion 55-60%. (Hearing Examiner Finding of Fact No. 32.)

Bargaining Act (Act 111).[2] The Union seeks to establish that the volunteer fire companies and Township are joint employers of the housemen. Because the township is a political subdivision of the Commonwealth, the Union seeks certification under Act 111.

Our scope of review of a Board order is limited to a determination of whether the Board's findings are supported by substantial and legally credible evidence and whether its conclusions based on facts are reasonable and not capricious, illegal or arbitrary. *Erie County Area Vocational-Technical School v. Pennsylvania Labor Relations Board,* 52 Pa. Commonwealth Ct. 388, 417 A.2d 796 (1980).

The issue before this Court is whether the Board erred in concluding that the Township and the individual fire companies were not joint employers of the housemen.

To determine whether an employer-employee relationship exists, the hearing examiner inquired into "[w]hether the township possesses and exercises the right to hire, fire and control the conditions of employment of the housemen, in combination with the volunteer fire companies. . . ."[3]

The Union contends that this standard is not consistent with the "joint employer" test enunciated in *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974), and explained in *Costigan v. Philadelphia Finance Department Employees Local 696,* 462 Pa. 425, 341 A.2d 456 (1975). We disagree.

---

[2] Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§217.1-217.10. This act controls collective bargaining between policemen and firemen and the Commonwealth or its political subdivisions. The Fire Department consists of a Superintendent of Fire, a Deputy Superintendent, Fire Marshall, Deputy Fire Marshalls, and a Secretary. The parties stipulated that these individuals are not firemen within Act 111. (Hearing Examiner Finding of Fact No. 12.)

[3] Hearing Examiner proposed opinion and order, p. 7; Board opinion and order, p. 2.

*Sweet* and *Costigan*,[4] which both the examiner and Board cite in their respective opinions, require an examination into who possesses the right to control the economic and conditional terms of employment, while being cognizant of the purposes and policies of the Labor Relations Acts in this Commonwealth.[5] We hold that the examiner and the Board applied the correct legal standard.

The Union also contends that the testimony and exhibits produced at the hearing overwhelmingly demonstrate that the Township exercises extensive and actual control over the important conditions of the employment relationship.

Our review of the record discloses that the examiner's findings, which are supported by substantial evidence, uphold his conclusion that the Township is not a "joint employer." Each volunteer fire company has its own fire chief, president, board of directors and establishes its own internal house rules. The fire chiefs exert exclusive control over their companies' men at all fires. Each company owns its own equipment and fire houses. The wages, benefits and hours for the housemen are determined independently by each fire company.[6] Holidays, sick leave and the entitlement to uniforms are controlled by each fire com-

---

[4] Although the employees in *Sweet* and *Costigan* were court-related personnel seeking certification under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301 (Act 195), we believe that the joint employer test established thereunder controls pertinent certifications under Act 111.

[5] Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§211.1-215.5; Public Employe Relations Act; and Policemen or Firemen Collective Bargaining Act.

[6] The fire companies pay their housemen the following salaries: Belmont Hills, $13,100; Bryn Mawr, $14,000 to $16,700; Gladwyne, $13,000 to $15,000; Merion of Ardmore, $13,000 to $13,600; Penn Wynne-Oakbrook Hills, $15,000; Union Fire Company of Lower Merion, $12,577 to $13,252.

pany. Finally, each fire company is responsible for and actually hires, disciplines and terminates its housemen.

In contrast, the Township's sole involvement with the fire companies is through its Fire Department, which coordinates a firefight when three or more companies are called and directs the work of the fire chiefs, not the individual volunteer firefighters). Economically, the Township appropriates lump sum monies for each fire company, provides statutorily mandated workmen's compensation insurance for the housemen,[7] and makes available Blue Cross/Blue Shield coverage to the housemen whose respective companies have requested it. Finally, the Township has the conditional authority to disapprove the hiring of a houseman.[8]

We agree with the Board that these peripheral contacts do not amount to any substantive authority or real control over the economic and conditional terms of employment for the housemen at the individual volunteer fire companies. *Local 1400, Chester City Fire Fighters Association v. Nacrelli,* 30 Pa. Commonwealth Ct. 242, 373 A.2d 472 (1977). This conclusion is in accord with the purposes and principles of labor

---

[7] This coverage is provided by the Township pursuant to Section 601 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1031.

[8] Section 409 of the By-Laws of the Fire Department of the Township of Lower Merion states:

The hiring of paid firemen (housemen) shall be a company function. The Board of Commissioners does however reserve the right to disapprove the hiring of an individual by any company with the exception of the Narberth Fire Company. Such action may be taken when in the opinion of the Board said individual would be incompetent or the character of such individual determined to be of the discredit to the department or the Township.

The examiner and the Board noted that this power has never been exercised.

law in that future negotiations will involve only parties with direct and immediate interests.

We hold that the Board's findings are supported by substantial evidence and that it made no error of law in concluding that the Township and the volunteer fire companies are not joint employers.

Affirmed.

ORDER

The order of the Pennsylvania Labor Relations Board, No. PF-R-81-55-E dated January 19, 1983, is affirmed.