OPINION BY
JUDGE McCULLOUGH
The Borough of Emmaus (Borough) petitions for review from the September 16, 2014 final order of the Pennsylvania Labor Relations Board (Board), which dismissed the Borough’s exceptions to the hearing examiner’s June 3, 2014 order certifying the Pennsylvania Professional Fire Fighters Association (Association) as the exclusive representative of all full-time and regular part-time firefighters of the Borough’s Fire Department (Fire Department) under the act commonly referred to as Act 111.[1]
In this case, the Fire Department was previously considered — or at least believed — to be a “volunteer” fire department that operated independent of the Borough. However, the Borough’s Council passed an ordinance that paid its firefighters an hourly wage and structured the Fire Department in such a manner that the firefighters were placed under the authoritative and direct control of the Borough Council and/or its supervisory agents. As a result of these measures, the firefighters instituted proceedings under Act 111, and the Board concluded that an *387 employer-employee relationship existed between the Fire Department and the Borough; therefore, the firefighters were authorized by statute to unionize, and, with the Association’s representation, engage in collective bargaining with the Borough. Discerning neither error nor abuse of discretion in the Board’s decision, we will affirm.
Background
On October 24, 2013, the Association filed a petition seeking to represent a unit of full-time and regular part-time firefighters employed by the Borough. At a hearing before a Board hearing examiner on January 9, 2014, the parties stipulated that the only issue to be decided “is whether the petitioned-for fire fighters are employed by the Borough.” (Board’s Findings of Fact (F.F.) at No. 3.)[2] The hearing examiner made the following findings of fact.
The Borough is a public employer and a political subdivision pursuant to Act 111 and the Pennsylvania Labor Relations Act (PLRA).[3] The Fire Department is a nonprofit corporation incorporated by the Borough. The Borough owns the Fire Department building, most of the Fire Department equipment, and the firefighters’ training facility. (F.F. at Nos. 1, 5, 8.)
In 1999, the Borough adopted Ordinance No. 887 (Ordinance) “to effectuate the ‘Establishment of the Fire Department ... comprised of vehicles, equipment, and volunteers from the pre-existing Fire Department of the Borough ... and any additional equipment or manpower which may be specified by Borough Council.’ ” (F.F. at Nos. 5-6 (quoting Ordinance).) The Ordinance also established various officer positions, including Fire Chief, Assistant Fire Chief, Deputy Fire Chief, Captain, Lieutenant, and Engineer. The Ordinance states that the Borough Council shall appoint those officers, who “ ‘shall serve as at-will employees and appointees.’ ” (F.F. at 6 (quoting Ordinance).) The Borough retained the right to adopt rules, regulations, and standard operating procedures, which are binding on the Fire Department and its firefighters; however, the Fire Chief has the right to issue standing orders and a Standard Operating Procedure Manual to direct firefighting activities. The Ordinance also “designates the Borough Council as the entity which sets salaries and compensation for [the] firefighters, after consideration of any recommendation which the Fire Chief may provide.” (F.F. at No. 7.)
The Fire Department does not pay for its operations, equipment, or personnel because the Borough directly pays for those items from its Fire Department budget. The Fire Department obtains fuel for fire trucks and equipment directly from the Borough garage at no cost. The Borough’s budget contained “38 line items for the Fire Department, totaling $513,016 in actual expenditures in 2012 and a 2013 budgeted amount of $448,158.” (F.F. at No. 11.) Pursuant to Borough regulations, no one at the Fire Department, including the Fire Chief, is authorized to make expenditures greater than $500.00 without first obtaining the Borough’s permission. (F.F. at Nos. 10-11.)
The Fire Department is managed by two Borough employees, the Fire Chief and the Borough Secretary. The Borough Secretary “runs the day-to-day operations, including the scheduling of fire fighters on *388 a monthly calendar” and also exercises discretion in assigning firefighters to specific shifts. (F.F. at 12.) The firefighters perform various activities during their assigned shifts, such as responding to fire calls, maintaining the fire station, and training. When the firefighters arrive at work, they are required to punch in and out with a time-card system so that the Borough Secretary may track their hours. When a firefighter is unable to work a scheduled shift, he or she must find a replacement. During their scheduled shifts, the firefighters are not permitted to leave the fire station to conduct personal errands. Based on the firefighters’ time-sheets, the Borough issues monthly paychecks directly to the firefighters and withholds taxes from their paychecks. The firefighters also receive W-2 tax forms from the Borough at the end of each year. The firefighters are paid an hourly rate and may receive overtime if it is authorized by the Fire Chief or Assistant Fire Chief. If overtime is not authorized, a firefighter must punch out and continue to work his or her shift as a volunteer without pay. In 2012, the wage rate for the firefighters ranged from $10.00 per hour to $15.00 per hour. The Borough Council “has the power to set and approve the hourly rates.” (F.F. at Nos. 13-15,18.)
A person interested in becoming a firefighter for the Fire Department must complete an application, which is reviewed by the Fire Chief but “then must be approved by the Borough.” (F.F. at No. 20.) “The Borough Council regularly reviews the [Fire] Chiefs recommendations for the hiring of fire fighters.” (Id.) Although the Fire Chief is responsible for disciplining firefighters, the Borough has the final say over disciplinary matters. A firefighter who is unhappy with the Fire Chiefs disciplinary decision “may appeal the decision to the Borough Manager.” (F.F. at No. 21.) In one instance, the Fire Chief terminated a firefighter; however, the termination letter directed the firefighter to the Borough Manager regarding questions about the discipline, and the Borough Manager attended the firefighter’s termination meeting. The Borough Manager has the power to discipline members of the Fire Department for violating the Borough policies. (F.F. at No. 22.)
In 2011, all firefighters received the Borough’s Personnel Policy, which “is a compilation of Borough policies ranging from hiring to drug and alcohol to personnel files, signed by the Borough Council President.” (F.F. at No. 23.) The Personnel Policy also states that it “does not alter the ‘at-will presumption of employment.’ ” (Id. (quoting Personnel Policy).) All firefighters were required to sign a form acknowledging receipt of the policy and return it to the Borough Manager. The firefighters also received the Borough’s Non-Union Employees Light>-Duty Policy and were required to provide a form acknowledging its receipt to the Borough Manager. (F.F. at No. 24.) In December 2013, the Borough issued the firefighters a memorandum "with their paychecks regarding the local services tax; the memorandum stated that it was directed to all “[Paid-Time] Employees.” (F.F. at No. 25.)
The Fire Department’s Standard Operating Guidelines (Guidelines) “defer to and rely on the personnel policies and regulations set forth by the Borough.” (F.F. at No. 26.) For example, the Guidelines allow the Borough to perform background checks on all firefighters. The officers of the Fire Department are required to submit annual budget requests to the Fire Chief and the Borough Secretary, who then provide the requests to the Borough Council. Although the Borough Council tries to give deference to the requests, it often rejects them due to “deficits and *389 other safety concerns.” (F.F. at Nos. 26, 28.)
The Fire Chief “is in charge at a fire and gives directives to the individual fire fighters in their daily operations.” (F.F. at No. 30.) The Fire Chief has disciplined firefighters for various offenses, including insubordination. The Fire Chief terminated a firefighter in February 2011, without obtaining approval from anyone, and also suspended a firefighter in October 2011. (F.F. at No. 29.)
By order dated April 11, 2014, the hearing examiner determined that the firefighters are employees of the Borough, rather than volunteers, because they receive an hourly wage in exchange for their services. Because the Borough exercises control over the firefighters and has the ultimate say over disciplinary and hiring matters, the hearing examiner also determined that an employment relationship exists between the Borough and the firefighters under Act 111. Thereafter, on June 3, 2014, the hearing examiner issued an order certifying the Association as the exclusive representative of all full-time and regular part-time firefighters of the Fire Department.
On June 23, 2014, the Borough filed exceptions to the June 3, 2014 order, arguing that some of the hearing examiner’s factual findings were not supported by substantial evidence and the hearing examiner erred in concluding that the firefighters are the Borough’s employees. The Board agreed with the hearing examiner that the firefighters are Borough employees under Act 111 and, therefore, dismissed the Borough’s exceptions. The Borough now appeals from that decision.[4]
Discussion
On appeal, the Borough asserts that the Board erred in concluding that the firefighters are Borough employees rather than volunteers and that the Board’s factual findings are unsupported by substantial evidence.
Section 1 of Act 111 provides:
Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through _ labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.
43 P.S. § 217.1 (emphasis added).
Preliminarily, we note that neither Act 111 nor the PLRA defines the term “volunteer.” However, the customary legal definition of “volunteer” is “[a] person who gives his services without any express or implied promise of remuneration.” Black’s Law Dictionary 1576 (6th ed. 1990) (emphasis added). In this case, it is undisputed that the Borough pays the firefighters hourly wages in exchange for their services, at rates between $10.00 per hour to $15.00 per hour, and that the Borough pays the firefighters for all of the hours that they work, excluding overtime. (F.F. at No. 17.) The payment of compensation, particularly financial compensation based upon the number of hours worked, *390 is the hallmark of “employee” status in the labor relations context. See, e.g., Seattle Opera v. National Labor Relations Board, 292 F.3d 757, 762 (D.C. Cir. 2002) (stating that an employee is any person who works for another for financial or other compensation).[5] At the very least, the payment of hourly wages is sufficient to take a worker out of the realm of being a “volunteer” (unless a statute says otherwise) and/or militates toward a finding that an employment relationship exists. See Juino v. Livingston Parish Fire District, 717 F.3d 431, 437 (5th Cir. 2013) (observing that courts “have held that a volunteer was not an ‘employee’ when there was no showing of remuneration.”); Krause v. Cherry Hill Fire District 13, 969 F.Supp. 270, 277 (D.N.J. 1997) (concluding that firefighters were not volunteers “[i]n view of the fact that the [firefighters] both expected and received hourly compensation .... ”). Because the payment of hourly-based wages takes the firefighters outside the realm of the definitional concept of volunteers, the dispositive issue, then, is whether the firefighters, in light of the circumstances of this case, are “employees” of the Borough.
“The determination of the employment status is a matter of fact in each case and must be determined by the peculiar circumstances of the individual situation.” Rodgers v. Washington County Institution District, 349 Pa. 357, 37 A.2d 610, 611 (1944). In Sweet v. Pennsylvania Labor Relations Board, 457 Pa. 456, 322 A.2d 362 (1974), the Pennsylvania Supreme Court set forth the following test for determining whether an employer-employee relationship exists: whether the putative employer has (1) the right to select the employee; (2) the power to discharge the employee; and (3) the right to direct the work to be done and the manner in which the work is done. Id. at 365; see also International Association of Fire Fighters, Local 2844, AFL-CIO, CLC v. Pennsylvania Labor Relations Board, 95 Pa.Cmwlth. 93, 504 A.2d 422, 424 (1986) (en banc) (stating that Sweet “require[s] an examination into who possesses the right to control the economic and conditional terms of employment”). The Sweet Court further stated that “[t]he duty to pay an employe’s salary is often coincident with the status of employer, but not solely determinative of that status.” 322 A.2d at 365. Following Sweet, in Coleman v. Board of Education of the School District of Philadelphia, 477 Pa. 414, 383 A.2d 1275 (1978), the Pennsylvania Supreme Court explained that “[t]he [Sweet] test is thus framed in terms of the right and power to exercise such control, not in terms of whether the right and power were actually exercised or whether they were delegated to another.” Id. at 1279 (emphasis in original).
Here, the Board found that: the Ordinance established the Fire Department and reserved to the Borough the right to establish rules, regulations, and procedures for the Fire Department; the Borough owns all of the Fire Department’s equipment and buildings; the Borough controls and pays for the Fire Department’s budget and expenditures; the Fire Department is run by the Fire Chief and the Borough Secretary, both of whom are Borough employees; and the firefighters are required to punch in and out of work and must remain at the fire station during their shifts. (F.F. at Nos. 6-8, 10-11, 13-14.) With regard to wages, the Board *391 found that: the Borough pays the firefighters hourly wages and withholds taxes from their paychecks; the Borough Council sets and approves the firefighters’ hourly pay rates; the firefighters may work overtime if it is approved by the Fire Chief, a Borough employee; and if overtime is not approved, the firefighters must punch out and work as volunteers without pay. (F.F. at Nos. 15-18.) Critically, the Borough did not file exceptions to any of these factual findings, so they are conclusive on appeal. See 34 Pa. Code § 95.98(a)(3) (stating that exceptions not specifically raised before the Board are waived).
Upon examination, we conclude that these factual findings stand in diametric contrast to the findings in International Association of Fire Fighters, Local 28kk, AFL-CIO, CLC. In that ease, this Court concluded that a township did not exercise control over the important conditions of the employment relationship and, therefore, was not the “employer” of a volunteer fire company. Specifically, the findings of fact in International Association of Fire Fighters, Local 28U, AFL-CIO, CLC demonstrated that the volunteer fire company — not the township — established its own internal house rules, owned its equipment and fire house, determined the wages, benefits, and hours of the firefighters, and had its own president, board of directors, and fire chief. The polar opposite situation is present here, where the Borough has undertaken the task of governing and dictating all the terms and conditions of the working relationship that the volunteer firefighters decided for themselves and on their own accord in International Association of Fire Fighters, Local 2844, AFL-CIO, CLC. Therefore, we conclude that the above unchallenged findings sustain the Board’s determination that the Borough exercises control over the firefighters’ wages, hours, and working conditions.
Further, this Court has stated that “[t]he employer’s power to control the nature and the parameters of the employee’s activities is the key to the relationship.” Harmony Volunteer Fire Company v. Pennsylvania Human Relations Commission, 73 Pa.Cmwlth. 596, 459 A.2d 439, 442 (1983). In other words, an extremely important component of any employer-employee relationship is the employer’s “right to direct the work to be done and the manner in which the work is done.” Sweet, 322 A.2d at 365.
In Kelley v. Delaware, Lackawanna & Western Railroad Co., 270 Pa. 426, 113 A. 419 (1921), the employer entered into a contract with a mine worker, which provided that “[t]he work was to be carried on under the supervision and according to the direction of the manager or his duly authorized agent,” id. at 420, and the mine foreman was the designated agent of the manager. Our Supreme Court concluded that, through the manager and/or the mine foreman, the employer actually exercised the right to direct and control the specific details of the work project and that the manager had the power to discharge an employee. As the Supreme Court concluded:
Recurring to the contract, we ascertain that it provides [that] the mine foreman shall have control of the work, and the [mine worker] shall be subject to his orders and directions .... with the right to remove from the work any workmen who in the opinion of its manager are incompetent, careless, or for any other reason unsatisfactory, and that the interpretation of the contract with reference to the work shall be by the manager whose decision shall be conclusive .... It is therefore manifest that through the manager and mine foreman full control over the means and manner *392 of performance was reserved to [the employer], and there was left in the [mine worker] no independence whatever in manner and means of performance. This leads to the inevitable conclusion that the relation of the [mine worker] to the [employer] was that of employee ....

Id.

Here, the Board found that the Fire Department is run, on a practical basis, by two Borough employees: the Fire Chief and the Borough Secretary. In particular, the Borough Secretary runs the day-to-day operations, and, among other things, schedules firefighters on a monthly calendar and assigns them to specific shifts. The Fire Chief administers the rules and regulations, is in charge and directs the movements of the firefighters at a fire, and gives directives to the individual firefighters in their daily operations when they are not attending to a fire. In addition, the Fire Chief possesses the power to discipline the firefighters, including the authority to terminate them, while the Borough Manager has the authority to discipline the firefighters for violating the Borough policies. (F.F. at Nos. at 13, 21-22, 26, 30.) Notably, for any shift on which a firefighter is scheduled, the firefighter must remain at the Fire Department or otherwise engage in activities related to his or her duties, and is not free to leave the Fire Department to run personal errands or engage in personal matters. (F.F. at 14.) Cf. Mendel v. City of Gibraltar, 842 F.Supp.2d 1035, 1042 (E.D. Mich. 2012), rev’d on other grounds by 727 F.3d 565 (6th Cir. 2013) (“Lack of control is illustrated by this undisputed fact: the firefighters are not required to report when the City calls them to respond to a fire emergency.”); Wolverton v. City of Kenner, 225 So.2d 662, 663 (La. Ct. App. 4th Cir. 1969) (“Indeed the evidence is unre-butted that the individual volunteer is at liberty to go or not to go to any particular fire as he alone sees fit, making it plain that not even the Volunteer Company controls him.”).
The Borough did not take exception to any of the above findings of fact either and, hence, they too are binding and conclusive for purposes of this appeal. See 34 Pa. Code § 95.98(a)(3).
These findings, in turn, render the circumstances of this case akin to those in Kelley. Therefore, in accordance with Kelley, we conclude the Borough, acting through the Borough Secretary and the Fire Chief, actually directs and controls the details of the firefighters’ work and has the power to discipline and discharge the firefighters if necessary. Significantly, it is undisputed that the Borough Secretary and the Fire Chief advance the interests of the Borough in managing and directing the firefighters in terms of their working schedules, job duties, and discipline, and both the Borough Secretary and Fire Chief are statutorily designated — or are on the same level — as the Borough in its capacity of “employer.” See Section 3(c) of Act 111, 43 P.S. § 217.3(c) (“The term ‘employer’ includes any person acting, directly or indirectly, in the interest of an employer ... ”); see also Lancaster County v. Pennsylvania Labor Relations Board, 124 A.3d 1269, 1287 (Pa. 2015) (interpreting similar statutory provision in PERA and concluding that supervisors were the “employer” because the supervisors were “individuaos] having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes” or “to a substantial degree effectively recommend such action ....”) (citation omitted).
The Borough contends, though, that the Board’s Finding of Fact No. 21, insofar as it stated that “the final say on discipline *393 rests with the Borough,” id. is not supported by substantial evidence.
Under Pennsylvania law, it is within the province of the Board, as the factfinder, to weigh conflicting evidence, make appropriate credibility determinations, resolve primary issues of fact, and draw reasonable inferences from the established facts and circumstances. Lehighton Area School District v. Pennsylvania Labor Relations Board, 682 A.2d 439, 442 (Pa. Cmwlth. 1996). Findings of fact are conclusive on appeal as long as the record contains substantial evidence to support those findings. Uniontown Area School District v. Pennsylvania Labor Relations Board, 747 A.2d 1271, 1274 (Pa. Cmwlth. 2000).
“Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board, 694 A.2d 1142, 1145 n.5 (Pa. Cmwlth. 1997). Stated differently, “[sjubstantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established.” Shive v. Bellefonte Area Board of School Directors, 12 Pa.Cmwlth. 543, 317 A.2d 311, 313 (1974).
In performing a substantial evidence analysis, this Court must view the evidence in the light most favorable to the party who prevailed before the factfinder and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party. See Waldameer Park, Inc. v. Workers’ Compensation Appeal Board (Morrison), 819 A.2d 164, 168 (Pa. Cmwlth. 2003); Tapco, Inc. v. Unemployment Compensation Board of Review, 168 Pa.Cmwlth. 292, 650 A.2d 1106, 1108-09 (1994). Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the factfinder. Rather, the pertinent inquiry is whether there is any evidence which supports the factual finding actually made. See Waldameer Park, 819 A.2d at 168; Tapco, Inc., 650 A.2d at 1108-09.
At the hearing, the Borough Secretary testified that if a disciplined firefighter has “a major problem[,] [he or she] can go above the department head, the [F]ire [CJhief, and go to the Borough,” specifically the Borough Manager. (Notes of Testimony (N.T., 1/9/14, at 325-26.) In one instance, a termination letter specifically advised a discharged firefighter to contact the Borough Manager with any questions, and the Borough Manager attended the termination meeting. (Id. at 306, 325.) The Borough Secretary further testified that a disciplined firefighter’s final recourse is to appeal to the Borough Manager. (Id. at 326.) While it is true that the Borough Secretary was unaware of specific instances in which the Borough Manager had overruled the Fire Chief, she testified that the Borough Manager can overrule the Fire Chiefs disciplinary decisions. (Id. at 326-27.) Furthermore, the Borough Manager testified that if a member of the Fire Department does not adhere to the Borough’s policies, the Borough Manager has “the power as a member to discipline anyone. It’s [his] function [to discipline] those violating policies in” the Fire Department. (Id. at 199.)
Viewing this evidence in the light most favorable to the Fire Department,[6] we con- *394 elude that the record contains substantial evidence to support the Board’s finding that the Borough Manager, a high-ranking supervisory agent who acts on behalf of the Borough Council, has the ultimate authority on disciplinary matters. See 43 P.S. § 217.3(c) (“The term ‘employer’ includes any person acting, directly or indirectly, in the interest of an employer ...”); Section 1141 of the Borough Code,[7] 8 Pa.C.S. § 1141 (stating that “[t]he council of a borough may, at its discretion at any time, create by ordinance the office of borough manager” and that “[t]he borough manager shall serve at the pleasure of council .... ”); see also Lancaster County, 124 A.3d at 1287. Although the record indicates that the Borough Manager has not yet exercised this authority, and it is conceivable that he never will, the key inquiry in determining whether an employment relationship exists is whether the putative employer has “the right and power to exercise ... control, not ... whether the right and power were actually exercised .... ” Coleman, 383 A.2d at 1279. Therefore, we conclude that the Board did not err in determining that the Borough, acting through the Borough Manager, retained the right to discipline or terminate a firefighter irrespective if any discipline imposed by the Borough Secretary or Fire Chief.
The Borough also contends that the firefighters cannot be employees of the Borough because the Borough Council uses the term “appoint,” rather than “hire,” when voting to approve the Fire Chiefs recommendation for a firefighter. The Borough asserts that the record lacks substantial evidence to establish that the Borough Council in fact “hires” the firefighters.
We disagree. The Borough’s argument is largely one of semantics and, based on the current record, there is no meaningful legal distinction between the Borough Council’s “appointment” or “hire” of a firefighter. As the Board explained:
It is undisputed that the [Fire] Chief, a Borough employee, makes a recommendation to the Borough Council for the “appointment” of a person as a firefighter in the Fire Department. Indeed, the mere fact that the [Fire] Chief must seek Council’s appointment of a firefighter implies that the Borough may deny the appointment. Thus, it is the Borough Council, not the [Fire] Chief or Fire Department, which ultimately decides whether a person becomes a firefighter in the Borough .... The Borough Council’s “appointment” of a firefighter carries with it the understanding that the firefighter will per *395 form services for the Borough within the Fire Department, including fire suppression and maintenance of Borough property, and in exchange for those services the firefighter will receive from the Borough an hourly wage. Indeed it is the same relationship created when the Borough indisputably “hires” a person for an hourly wage in the Borough office, streets department, police department, or anywhere else within the Borough.
(Board’s Decision at 7.)
Given this logical and reasonable inference, to which the Fire Department is entitled as the prevailing party, we conclude that the record contains substantial evidence that supports the Board’s determination that the Borough Council has the authority to hire firefighters and indeed hires the firefighters as a matter of law.
Accordingly, having determined that the Borough pays the firefighters hourly wages, exercises control over the firefighters’ wages, hours, and working conditions, directs and controls the details of the firefighters’ work, possesses the authority (or retains the authority) to discipline and/or discharge the firefighters, and has the power to hire the firefighters, we conclude that the Board did not err in concluding that the relationship between the Borough and the firefighters in the Fire Department was that of employer and employee. See Sweet, 322 A.2d at 365 (“The relation between employer and employe exists when a party has the right to select the employe, the power to discharge him, and right to direct both the work to be done and the manner in which such work shall be done.”).
The Borough’s remaining arguments lack merit. The Borough contends that it “never took any legislative action evidencing an intent to provide fire protection services through a professional fire department consisting of Borough employees.” (Borough’s brief at 29.) To the contrary, the Ordinance and the Borough’s conduct, as described and detailed above, prove that the Borough took action sufficient to create an employment relationship.
The Borough further asserts that the firefighters are equitably estopped from arguing that they are not volunteers because they have belonged to volunteer firefighting organizations and received certain benefits. More specifically, the Borough maintains that the firefighters’ participation in the Emmaus Fireman’s Relief Association (EFRA) and the Foreign Fire Insurance Tax Distribution Law (FFITDL),[8] providing for pension benefits, bar the firefighters from claiming that they are employees.
The Board correctly dismissed this argument as follows:
With regard to the Borough’s claims of estoppel, the Hearing Examiner rejected those claims noting that the volunteer benefits under the [EFRA] were also available to employees, and thus could not estop the firefighter from asserting employee status. Furthermore, the Hearing Examiner rejected the Borough’s argument that the firefighters should be estopped from asserting employee status because the Fire Department received state funding under the [FFITDL], where it was the Borough, not the firefighters, who had repeatedly certified to the state that the firefighters were volunteers in order to obtain the state funding. Nevertheless, we note as held by the Hearing Examiner, citing to Borough of Whitaker, 14 PBER § 14273 (Final Order, 1983), that “[i]t is well settled that the status of alleged employ *396 ees under other statutory provisions, such as the Civil Service Act ... or [FFITDL] is not dispositive of their coverage under Act 111.” [citation omitted.] Similarly, the Borough’s claims that the Hearing Examiner’s order directs the Borough to employ firefighters in violation of other laws, such as civil service, veteran’s preference or any number of other employment statutes is without foundation in law or fact. Notably, the Borough has not pointed to a single firefighter whose appointment violated any laws of the Commonwealth or United States. The crux of the matter here is that because firefighters were appointed by the Borough to provide services for an hourly wage, the Borough hired them as employees under the PLRA and Act 111. If laws were violated by the Borough’s appointment of a firefighter, it was not caused by the Board’s decision in this case.
(Board’s decision at 11-12.)
We agree with the Board’s analysis and adopt it as our own. In addition, we point out that “[i]n the absence of expressly proved fraud, there can be no estoppel based on the acts or conduct of the party sought to be estopped” and “an estoppel cannot be created by representations or opinions concerning matters of law.” Wilson v. Transport Insurance Co., 889 A.2d 563, 575 (Pa. Super. 2005). Here, there is no proof, or even suggestion, that the firefighters engaged in fraudulent conduct and the issue of whether one is an “employee” and/or “employer” under Act 111 is a conclusion of law upon which estoppel does not apply.
The Borough’s reliance on Tyrone Fire Patrol Company, No. 1 v. Tyrone Borough, 92 A.3d 79 (Pa. Cmwlth. 2014), is misplaced. First and foremost, Tyrone involved an entirely different legal issue than the one at bar; namely, whether the volunteer fire police members had a contractual or continued expectation in employment for purposes of due process, which we concluded that they did not. Id. at 90. Second, in reaching our decision in Tyrone, we briefly noted that the volunteer fire police members were not paid wages and, as a result, were not employees. Id. at 91; see also id. at 92 n.14 (noting that the fire police members were “not paid employees that have a statutory right to a continued expectation of employment”). Unlike Tyrone, the firefighters in this case are paid hourly wages in exchange for their services, and the Borough controls the amount and payment of such wages. While the payment of wages alone is not dispositive of an employment relationship, see Sweet, 322 A.2d at 365, when viewed together with the other credible evidence of record in this case — evidence that was lacking in Tyrone — the Board’s conclusion in that the firefighters are employees of the Borough under Act 111 rests upon additional evidence and facts that were not present in Tyrone. Because we have concluded that the Board did not err in determining that the firefighters in the Fire Department are employees of the Borough, and not volunteers, our decision in Tyrone is readily distinguishable and has no bearing on this case.
Finally, the Borough has submitted applications for post-argument communications, citing the Supreme Court’s decision in Philadelphia Firefighters’ Union, Local 22, International Association of Firefighters, AFL-CIO v. City of Philadelphia, 632 Pa. 243, 119 A.3d 296 (2015), and the concurring statement of a Justice, joined by another Justice, in Chambersburg Borough v. Pennsylvania Labor Relations Board, 139 A.3d 189 (Pa. 2016) (Dougherty, J., concurring from the dismissal of the appeal as improvidently granted, joined by Donohue, J.). Although this Court grants *397 the Borough’s applications, these cases are not beneficial to the Borough’s position.
In Philadelphia Firefighters’ Union, Local 22, the only issue that the Supreme Court addressed was whether the City of Philadelphia had a duty to immediately fill vacancies for the positions of fire captain and fire lieutenant under the language and terms of its Civil Service Regulations. The Supreme Court concluded in that case that the City of Philadelphia had no such obligation. Clearly, Philadelphia Firefighters’ Union, Local 22 has no logical connection to the issue presented in this case. Moreover, the concurring opinion in Chambers-burg Borough from the dismissal of the appeal as being improvidently granted is non-binding authority on this Court. Nonetheless, that case dealt with the employer-employee relationship in the secondary boycott context, and the concurring opinion expressed the view that a secondary boycott could not occur because the firefighters, “volunteer members, who are free to decline to provide their services for any reason or no reason, are not ‘employees’ under [the PLRA or PERA].” 139 A.3d at 192. Even if this Court were to prescribe precedential value to this concurring opinion, the firefighters in this case, unlike those in Chambersburg Borough, are employees under Act 111 and must show-up and remain at the Fire Department, engage in activities related to their employment duties, and are not free to leave the Fire Department to run personal errands or engage in personal matters. Therefore, we conclude that the decisions cited by the Borough do not provide any kind of guidance in this matter.
Conclusion
By its own terms, Act 111 permits firefighters to unionize when they are “employees” of a municipality. The Borough references the interplay between statutes and volunteer firefighters and suggests that these statutes operate collectively to prohibit an employment relationship with the Borough under Act 111, or at least command and dictate that no “real” employment relationship exists. Although the Borough is statutorily mandated to create a fire force and provide workers’ compensation insurance for volunteer firefighters, and has the statutory discretion to provide funding, pensions, and other fringe benefits, such as health insurance, to the volunteer firefighters, this Court has already held that these “peripheral contacts do not amount to any substantive authority or real control [by the township] over the economic and conditional terms of employment for the housemen at the individual volunteer fire companies.” International Association of Fire Fighters, Local 2844, AFL-CIO, CLC, 504 A.2d at 425. We do not disagree with this holding, and all of the mandatory “peripheral contacts” detailed in International Association of Fire Fighters, Local 2844, AFL-CIO, CLC, have not factored in either the Board’s or this Court’s decision. To the extent that any of the discretionary “peripheral contacts” have contributed to our conclusion, they possess little but palpable weight for our decision, which, in overwhelming part, has as its genesis and foundation the presence of additional factors, specifically those that directly pertain to the Sweet test.
It is extremely relevant to our conclusion that the statutes referenced by the Borough do not dictate that the Borough establish an employment relationship with the firefighters, nor do the statutes have the per se effect of creating a defacto employment relationship. Specifically, none of the statutes that the Borough cites place upon the Borough the affirmative obligation to pay the firefighters in the Fire Department an hourly wage, or, more importantly, to exert significant control over the work to be done by the firefighters and *398 the manner in which it is to be done, which is the essence of the employment test that our Supreme Court created in Sweet.[9] Instead, the Borough, through the Ordinance and its own conduct, took the measures necessary to confer upon it the status of employer and create an employment relationship with the firefighters as employees. Having taken such action, and depriving the Fire Department of the freedom of true “volunteers” to conduct its own affairs when and how it sees fit, the Borough has ensured that its firefighters are under its control and will obey its commands. At the same time, however, the Borough has designated itself the firefighters’ employer for purposes of Act 111.
With all this being stated, we affirm the Board’s final order certifying the Association as the exclusive representative of all full-time and regular part-time firefighters of the Fire Department.

ORDER

AND NOW, this 13th day of March, 2017, we hereby grant the Borough of Emmaus’s applications to file post-submission communications and affirm the September 16, 2014 final order of the Pennsylvania Labor Relations Board.

. Act of June 24, 1968, P.L. 237, as amended, 43 P.S. §§ 217.1-217.10. Act 111 applies only to police and fire personnel. Section 1 of Act 111, 43 P.S. § 217.1.

. The Board adopted and incorporated the hearing examiner’s Findings of Fact Numbers 1 through 30. (See Board's Order, 5/1/14; Board’s Final Order, 9/16/14.)

. Act of June 1, 1937, P.L. 1168, as amended, 43 P.S. §§ 211.1-211.13.

. Our review of the Board’s order is limited to determining whether constitutional rights were violated, whether the Board committed an error of law, or whether the Board's findings Eire supported by substantial evidence. Wilkes-Barre Township v. Pennsylvania Labor Relations Board, 878 A.2d 977, 982 n.13 (Pa. Cmwlth. 2005).

. Due to similarities between the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, and the PLRA, "in the context of interpreting our Commonwealth's labor laws, our [courts have] not hesitated to consider, and to follow, federal interpretation of the NLRA.” Office of Administration v. Pennsylvania Labor Relations Board, 591 Pa. 176, 916 A.2d 541, 550 (2007).

. Although the Borough Secretary stated that she "believed” and "guessed” that the Borough Manager could overrule the Fire Chief, (N.T at 326-27), a fair contextual reading of her testimony, particularly the Borough Manager's affirmation that she "would say yes” to the above proposition, reveals that her statements were positive assertions of truth and *394 were not “so uncertain, inadequate, equivocal, ambiguous, or contradictory as to make findings or legitimate inferences therefrom a mere conjecture." Mrahunec v. Fausti, 385 Pa. 64, 121 A.2d 878, 880 (1956). See N.T. at 328 ("Q. And if [the firefighter] didn’t like the decision of the Fire Board, he could then go to the Borough manager? A. I would say yes.”); Somerset Welding and Steel v. Workmen’s Compensation Appeal Board (Lee), 168 Pa.Cmwlth. 78, 650 A.2d 114, 117-18 (1994) (stating that "[t]he rationalization of a witnesses] testimony and the acceptance of those portions thereof on which to make findings ... is the province of the [fact-finder]” and reiterating that "[t]he appearance of inconsistencies in ... testimony does not render that testimony equivocal.”); see also Inservco Insurance Services v. Workers’ Compensation Appeal Board (Purefoey), 902 A.2d 574, 579 (Pa. Cmwlth. 2006) (reviewing testimony, "I would say that I cannot say that he's completely [recovered]” and concluding that ”[t]his testimony, while admittedly not a model of clarity, is not equivocal.”); Czankner v. Sky Top Lodge, Inc., 13 Pa.Cmwlth. 220, 308 A.2d 911, 915 (1973) (concluding that testimony, “I would say that the exact cause of death was due to a pulmonary embolism,” was unequivocal evidence).

. 8 Pa.C.S. §§ 101-3501.

. Act of December 18, 1984, P.L. 1005, 53 P.S. §§ 895.701-895.707.

. The Dissent raises many of the same arguments as the Borough. In addition, although not expressed in such terms, the Dissent appears to suggest that Act 111 is incompatible or in conflict with the statutory regime regarding volunteer firefighters. However, because there is a very strong presumption that a statute does not impliedly repeal another statute, see Cedarbrook Realty, Inc. v. Nahill, 484 Pa. 441, 399 A.2d 374, 383 (1979), there has to be a point where volunteer firefighters become employees of a municipality for purposes of Act 111. True, under the pertinent statutes, a municipality can help fund and provide financial assistance to a volunteer fire department, akin to that which a parent company does with an unconsolidated subsidiary. But there is a remarkable difference between the situation where a parent merely owns a subsidiary financially and the scenario where the parent intermingles its operations with the subsidiary and controls the subsidiary’s operations by creating an employment relationship. Where, as here, a municipality designates the leaders of a fire department as its own high-ranking employees and those employees have the power to discipline, discharge, and control the day-to-day operations of the firefighters, the municipality effectively "merges” with the fire department for purposes of employment law and Act 111.
Significantly, the Dissent does not reference or discuss any statute or statutory scheme that requires a municipality to exert this type of control over a volunteer fire company. Accordingly, we view Act 111 and the statutes that the Borough and the Dissent cite as capable of concurrent operation, concluding that there is no irreconcilable conflict present amongst the statutes, and, at most, that the Dissent has merely shown a general overlap of the statutes in terms of basic subject matter. See Cedarbrook Realty, Inc., 399 A.2d at 383 ("In view of the presumption against implied repeal, it is authoritatively slated that this presumption may be overcome by a showing that two acts are irreconcilable, clearly repugnant as to vital matters to which they relate and so inconsistent that the two cannot have concurrent operation .... Appellant has shown that the two statutory schemes are different and may be overlapping. Such a showing does not amount to irreconcilability under Pennsylvania law.”).